WO                                                                                                          SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua DeRoche,<br><br>               Plaintiff,<br><br>vs.<br><br>Keith Smith, et al.,<br><br>               Defendants. | No.  CV 14-01274-PHX-SPL (JFM)<br><br><br>**ORDER** |

Plaintiff Joshua DeRoche, who is confined in the Arizona State Prison Complex, Special Management Unit, in Florence, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis.* (Doc. 1, 2.)  Plaintiff has since filed a motion for injunctive relief and a motion to amend his Complaint to identify the name of one Defendant.  The Court will order Defendants Goodale and Costello to answer Count I of the Complaint and will dismiss the remaining claims and Defendants without prejudice.  The Court will deny Plaintiff's motion for injunctive relief.

**I.      Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The Court will not assess an initial partial filing fee.  *Id.*  The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.  28 U.S.C.

1 § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government
2 agency to collect and forward the fees according to the statutory formula.

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less

stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

### III.    Complaint

Plaintiff alleges two counts for threat to safety.  Plaintiff sues the following current or former employees of the Arizona Department of Corrections (ADC):  Security Operations Administrator Keith Smith; Protective Custody (PC) Administrator John Doe; unknown PC Committee members; Corrections Officers II (CO IIs) Special Security Unit Goodale and Costello.  Plaintiff also sues Pinal County Attorney Michael L. Voyles and Pinal County Public Defender Mary Wisdom.  Plaintiff has filed a motion to correct his Complaint to substitute April Elliott for Mary Wisdom with his allegations against Wisdom to be considered made against Elliott.  The Court will grant that motion and substitute Elliott for Wisdom.

In Count I, Plaintiff alleges the following facts:  in early 2011, three convicted sex offenders assaulted a female correctional officer in the Rynning Unit, which is in the Eyman Complex.  The Pinal County Attorney prosecuted charges against the inmates.  One of the assailants, Kenneth Vickers, was transferred to SMU, also in the Eyman Complex.[1]

In November 2011, Plaintiff was housed in the same pod as Vickers.  Plaintiff sent a letter to the Pinal County Attorney's Office expressing his desire to see Vickers prosecuted and he offered to cooperate with the Pinal County Attorney by providing information from Vickers about the assault.

In January 2012, Plaintiff gave a recorded interview to investigator Kathy Ingulli of the ASPC-Florence Criminal Investigation Unit (CIU) about the assault.  Vickers and

---

[1] According to information available online, the offense occurred on August 21, 2010.  *See* http://apps.supremecourt.az.gov/publicaccess/ minutes.aspx, case# CR201101812, Minute Entry of Feb. 25, 2013 (last visited July 18, 2014).  On February 25, 2013, Kenneth Vickers pleaded guilty to aggravated assault pursuant to a plea agreement in that case.  *Id.*  The same day, co-defendant Luis Gutierrez-Valencia pleaded guilty to aggravated assault pursuant to a plea agreement in case CR201101810.  *Id.*  On August 12, 2012, co-defendant Richard White pleaded guilty to aggravated assault pursuant to a plea agreement, case CR201101811.  *Id.*

**TERMPSREF**

- 3 -

his co-defendants obtained discovery from the Pinal County Attorney's Office, including a witness list with Plaintiff's name on it, a copy of the letter Plaintiff sent to the office, and a copy of Plaintiff's CIU interview. Vickers and his co-defendants made copies of the paperwork and distributed it to other inmates. According to Plaintiff, at each location he was thereafter housed, at least one inmate had copies or access to copies of that paperwork and inmates were otherwise generally aware of Plaintiff's role. Plaintiff was considered a "snitch" and he was repeatedly verbally threatened. Plaintiff avoided serious injury only because he was held in a single occupancy maximum security cell.

In September 2012, Eyman Complex staff attempted to house Plaintiff in the Rynning Unit. Plaintiff informed staff of the potential threat to his safety. Nevertheless, SSU officer Goodale refused to initiate the protective segregation process under Director's Order (DO) 805. Goodale told Plaintiff that Plaintiff could not have problems on a yard he never been to. Plaintiff told Goodale that inmates with whom he had previously had issues were held in the Rynning Unit and he identified those inmates and their locations in the Rynning Unit. Goodale still refused to initiate the DO 805 process, to contact CIU or interview inmates who would have substantiated Plaintiff's information. Plaintiff refused to house for which he was sanctioned. Plaintiff contends that Goodale acted with deliberate indifference to a threat to his safety.

In June 2013, Plaintiff was housed in ASPC-Phoenix, when he again sought to initiate the DO 805 process. Plaintiff submitted a written statement setting out incidents to support the existence of a threat to his safety. The PC Administrator and the PC Committee denied Plaintiff's request for protective custody. On June 25, 2013, Security Operations Administrator Smith denied Plaintiff's appeal from the denial of PC. Plaintiff claims that Doe, the PC Committee, and Smith failed to contact Investigator Ingulli to verify Plaintiff's recorded interview or the Pinal County Attorney's Office to confirm the release of the witness list containing Plaintiff's name, and failed to interview inmates about the asserted threat to safety. Plaintiff contends that they thereby acted with deliberate indifference to a threat to his safety.

In January 2014, Plaintiff was being held in SMU, when three inmates called him a "rat" and told him that he would "get smashed" if he went to outside recreation. One of the inmates threatened to sharpen chicken bones to stab Plaintiff. Plaintiff submitted a letter to Defendant Costello with a summary of threats to his safety and again sought initiation of the DO 805 process, but received no response. Two days later, the inmate who had threatened Plaintiff was moved. Nevertheless, Plaintiff did not go to outside recreation because of threats from other inmates. Costello did not initiate the DO 805 process or update Plaintiff's "Do Not House With" (DNHW) list. Plaintiff contends that Costello thereby acted with deliberate indifference to a threat to his safety.

On April 16, 2014, Plaintiff was moved from a single inmate cell to a double inmate cell and Inmate Stephen Hall was celled with Plaintiff. Within a week, inmates in adjacent cells began yelling that Plaintiff was an informant. Plaintiff told Hall about the situation with Vickers and his name appearing on a witness list. Hall stated that he did not wish to get involved because he was due to be released in three months.

On April 25, 2014, Plaintiff and Hall were moved to the Rynning Complex Detention Unit (CDU) for reasons that are not explained. On April 28, 2014, an inmate came to their cell door and told Plaintiff that he was in a lot of trouble. He showed Hall the Pinal County Attorney's witness list and told Hall that he needed to attack Plaintiff. Hall refused. The inmate noted Hall's name and told him that he was on a hit list for not attacking Plaintiff. The same day, Plaintiff submitted a letter to the Caseload Manager, CO III Donaldson describing the incident. Plaintiff and Hall were returned to SMU that day. When they entered their living area, inmates began saying "There's Roach" referring to Plaintiff and saying "he snitched on GoGo, Happy, and A.R." (Doc. 1 at 3F.) An inmate told Hall that the witness list was in the pod next door and that he would send it to Hall as soon as he received it. Another inmate tried to persuade Hall to attack Plaintiff, but Hall refused.

Plaintiff contends that since 2011, the only safe option for him has been to remain in a lockdown unit by violating rules to keep him in maximum custody, but where he

1  does not have outside recreation or involvement with other inmates. He contends that
2  prison officials are well aware of the dangers to inmates posed by court paperwork
3  circulating among inmates that reflects that an inmate is an informant. Plaintiff fears that
4  the next inmate celled with him will be more likely to assault Plaintiff in response to
5  pressure to do so.

6  In Count II, Plaintiff sues "Lando" Voyles in his official capacity for failing to
7  implement an administrative policy to ensure the identity of individuals providing
8  confidential information, such as Plaintiff, from being included in disclosures to defense
9  counsel. As a result, Plaintiff's name was included on a witness list, which was
10 circulated in prison and Plaintiff has been repeatedly threatened by other inmates.

11 Plaintiff also sues April Elliott in her official capacity for failing to exercise
12 discretion concerning his identity. According to Plaintiff, the Pinal County Public
13 Defender's Officer released Plaintiff's identity to the criminal defendants against whom
14 Plaintiff had provided information and agreed to testify. He contends that the public
15 defender reasonably should have known of the risk to Plaintiff's safety by doing so.

16 **IV.     Failure to State a Claim**

17 To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants
18 (2) under color of state law (3) deprived him of federal rights, privileges or immunities
19 and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th
20 Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d
21 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific
22 injury as a result of the conduct of a particular defendant and he must allege an
23 affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*,
24 423 U.S. 362, 371-72, 377 (1976).

25 In both counts, Plaintiff asserts a claim for threat to safety. An Eighth
26 Amendment claim for threat to safety requires a sufficiently culpable state of mind by the
27 defendants, known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834
28 (1994). Deliberate indifference is a higher standard than negligence or lack of ordinary

due care for the prisoner's safety. *Id.* at 835. To state a claim of deliberate indifference, plaintiffs must satisfy a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious"; and the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834. Second, the prison official must have a "sufficiently culpable state of mind," *i.e.*, he must act with deliberate indifference to inmate health or safety. *Id.* In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A plaintiff "may demonstrate deliberate indifference by showing that the risk of harm was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past' such that the defendants 'must have known' about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3rd Cir. 2010) (quoting *Farmer*, 511 U.S. at 842).

In addition to the above, to state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom. *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001). Further, there is no *respondeat superior* liability under §1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity, "is only liable for

constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. In addition, where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); accord Proctor v. Applegate, 661 F.Supp.2d 743, 765 (W.D. Mich. 2009); *Stocker v. Warden*, No. 1:07-CV-00589, 2009 WL 981323, at *10 (E.D. Cal. Apr. 13, 2009); *Mintun v. Blades*, No. CV-06-139, 2008 WL 711636, at *7 (D. Idaho Mar. 14, 2008); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (a plaintiff must allege that a supervisor defendant did more than play a passive role in an alleged violation or mere tacit approval thereof; a plaintiff must allege that the supervisor defendant somehow encouraged or condoned the actions of their subordinates).

### A.  Unnamed and Fictitiously Named Defendants

Plaintiff sues the PC Administrator, referred to as John Doe, and the unnamed PC Committee members as Defendants. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint or amended complaint upon an anonymous defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Where the names of individual defendants are unknown at the time a complaint is filed, a plaintiff may refer to the individual unknown defendants as Defendant John (or Jane) Doe 1, John Doe 2, and so on, *and* allege facts to support how each particular Doe

defendant violated the plaintiff's constitutional rights. A plaintiff may thereafter use the discovery process to obtain the names of fictitiously-named defendants whom he believes violated his constitutional rights and seek leave to amend to name those defendants.

Plaintiff alleges that while he was held in ASPC-Phoenix, in June 2013, he sought to initiate the DO 805 process, but the PC Administrator and the PC Committee denied his request for PC. Plaintiff does not allege facts to support the existence of a substantial threat to his safety while he was at ASPC-Phoenix, or facts to support that either Doe or the Committee acted with deliberate indifference to a substantial threat to his safety while he was there. The Court will dismiss Doe and the Committee members without prejudice to Plaintiff seeking leave to amend to name these Defendants and to allege facts to support when and how each violated his constitutional rights.

**B.     Smith**

Plaintiff alleges that after Doe and the PC Committee denied Plaintiff's request for PC, Security Operations Administrator Smith denied Plaintiff's appeal. Absent more, Smith's mere denial of Plaintiff's appeal from the denial of PC is not sufficient to state a claim against him and he will be dismissed.

**C.     Count II**

In Count II, Plaintiff sues the Pinal County Attorney, Lando Voyles, and the Pinal County Public Defender, in their official capacities. Plaintiff sues Voyles for allegedly failing to implement an administrative policy to ensure that the identity of an informant, such as Plaintiff, is not disclosed to defense counsel. However, Plaintiff alleges that he was listed as a witness. Rule 15.1(b) of the Arizona Rules of Criminal Procedure requires prosecutors to disclose the names of witnesses to defense counsel. Further, a prosecutor is obligated to disclose statements made by a defendant that may be introduced by the prosecutor against a defendant. *See e.g. State v. Alvarado*, 591 P.2d 973, 976 (Ariz. 1979). For both reasons, Plaintiff fails to state a claim against Voyles for allegedly failing to implement an administrative policy to prevent disclosure of the identity of an informant who is a witness to defense counsel.

Plaintiff also fails to state a claim against Elliott.  A prerequisite for any relief under § 1983 are allegations to support that a defendant acted under the color of state law.  The "under color of state law" component is the equivalent of the "state action" requirement under the Constitution. *Luger v. Edmundston Oil Co, Inc.*, 457 U.S. 922, 928 (1982); *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000) (citing *Rendell-Baker v. John*, 457 U.S. 830, 838 (1982); *West v. Atkins*, 487 U.S. 42, 49 (1988)).  "Acting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (quoting *West*, 487 U.S. at 46).  Whether an attorney representing a criminal defendant is privately retained, a public defender, or court-appointed, he does not act under color of state law.  *See Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981); *Miranda v. Clark County, Nevada*, 319 F.3d 465, 468 (9th Cir. 2003) (*en banc*).  For that reason, Plaintiff may not seek relief under § 1983 against Elliott and she will be dismissed.

## V.     Claim for Which an Answer Will Be Required

In Count I, Plaintiff alleges that Defendants Goodale and Costello acted with deliberate indifference to a substantial threat to his safety by failing to initiate the protective segregation process where Plaintiff had cooperated with the Pinal County prosecutor, such cooperation was being circulated amongst other inmates, and Plaintiff had been repeatedly threatened by other inmates in different complexes based on his cooperation.  These Defendants will be required to respond to Count I of the Complaint.

## VI.    Motion for Injunctive Relief

As noted above, Plaintiff has filed a motion for injunctive relief.  (Doc. 7.)  To obtain injunctive relief, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008); *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  In addition, the "serious questions" version of the sliding scale test for preliminary injunctions remains viable

TERMPSREF

1  after the Supreme Court's decision in *Winter*. *Alliance for the Wild Rockies v. Cottrell*,
2  632 F. 3d 1127, 1134-35 (9th Cir. 2011). Under that test, a preliminary injunction is
3  appropriate when a plaintiff demonstrates that "serious questions going to the merits were
4  raised and the balance of hardships tips sharply in [plaintiff's] favor." *Id.* (citing *Lands
5  Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)). That approach requires
6  that the elements of the preliminary injunction test be balanced, so that a stronger
7  showing of one element may offset a weaker showing of another. "For example, a
8  stronger showing of irreparable harm to plaintiff might offset a lesser showing of
9  likelihood of success on the merits." *Alliance for the Wild Rockies*, 632 F.3d at 1135. A
10 plaintiff must also satisfy the other *Winter* factors, including the likelihood of irreparable
11 harm. *Id.* The moving party has the burden of proof on each element of the test.
12 *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal.
13 2000).

14 In addition, a temporary restraining order without notice may be granted *only* if
15 "specific facts in an affidavit or verified complaint clearly show that immediate and
16 irreparable injury, loss, or damage will result to the movant before the adverse party can
17 be heard" and the movant certifies to the court in writing any efforts made to give notice
18 and the reasons that notice should not be required. Fed. R. Civ. P. 65(b). Further, "[t]he
19 court may only issue a preliminary injunction on notice to the adverse party." Fed. R.
20 Civ. P. 65(a)(1).

21 Plaintiff alleges the following in his motion: on June 15, 2014, Plaintiff was
22 attacked by his cellmate, Stephen Hall, following an argument. During the argument,
23 Hall told Plaintiff that he was gaining a bad name for not attacking Plaintiff as a snitch.
24 Hall also told Plaintiff that an inmate had offered him payment for attacking Plaintiff.
25 Plaintiff suffered cuts and bruises and his eye was gouged during the incident. Hall was
26 assigned to a different housing unit. Plaintiff contends that he is likely to be attacked by
27 any future cellmate based on Plaintiff's reputation as an informant. Plaintiff seeks an
28 order requiring prison officials to segregate him and "conduct a meaningful protective

custody review."

Although Plaintiff indicates that he attempted to provide notice to Defendants, he appears to acknowledge that he has not done so.  While Plaintiff fears that he may be attacked by a future cellmate, it does not appear that any other inmate has been assigned to Plaintiff's cell.  Further, no Defendant has yet been served or appeared in this case. Under these circumstances, the Court will deny Plaintiff's motion without prejudice to filing a new motion.

**VII.  Warnings**

**A.  Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

**B.  Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.  Copies**

Because Plaintiff is currently confined in ASPC-Eyman and this case is subject to General Order 14-08, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  If Plaintiff is transferred to a prison other than ASPC-Eyman, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-08.

**D.  Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including

TERMPSREF

these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3) Plaintiff's motion to correct the Complaint is **granted** to the extent that "April Elliott" is substituted for "Mary Wisdom". (Doc. 10.)

(4) Count II is **dismissed** without prejudice.

(5) Defendants Voyles, Elliott, Smith, Doe, and unknown Committee members are **dismissed** without prejudice.

(6) Defendants Goodale and Costello must answer Count I.

(7) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Goodale and Costello.

(8) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m);

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

LRCiv 16.2(b)(2)(B)(i).

(10) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(11) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(13) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14) Any answer or response must state the specific Defendant by name on

whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15)   Plaintiff's motion for injunctive relief is **denied**.  (Doc. 7.)

(16)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 21st day of July, 2014.

Honorable Steven P. Logan
United States District Judge

TERMPSREF

- 15 -